In the Matter of Arch P. PETTIT and Ida Marie Pettit, f/d/b/a Archangel Corp., La Pettit Roche, Quapaw Quarter Shops Ener-Kleen, Debtors.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF LITTLE ROCK, Plaintiff,**

v.

Arch P. PETTIT and Ida Marie Pettit, f/d/b/a Archangel Corp., La Pettit Roche, Quapaw Quarter Shops Ener-Kleen, Defendants.

Bankruptcy No. LR–80–627.
Adv. No. AP 800265.

United States Bankruptcy Court,
E. D. Arkansas, W. D.

Sept. 25, 1980.

Mark Grobmyer, Little Rock, Ark., for plaintiff.

Wright, Lindsey & Jennings, Little Rock, Ark., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DENYING PLAINTIFF'S COMPLAINT FOR RELIEF FROM THE AUTOMATIC STAY

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff First Federal Savings & Loan Association of Little Rock, Arkansas, has filed its complaint in these chapter 11 proceedings to be permitted to foreclose its security interest in the tracts of real property described in the marginal note.[a1]

It is admitted by the defendants that the plaintiff has a valid and perfected security interest against both pieces of property. Nor is it denied by the plaintiff that the defendants have substantial equity in the property.[1] Thus, the court may not grant relief from the automatic stay in reliance upon the simple axiom that such relief

---

**a1.** The real property in respect of which the plaintiff seeks relief from the automatic stay is described in its complaint as follows: (1) "Lot 72, Queen Manor, an Addition to the City of Little Rock, in Pulaski County Arkansas, . . . commonly known as 2013 and 2015 Durwood, Little Rock, Arkansas," and (2) "Lot 43, Treasure Hills subdivision, in the City of Little Rock, Pulaski County, Arkansas."

**1.** Both defendants' admission of the validity and perfection of plaintiff's security interests in both tracts of realty and plaintiff's admission that the defendants have a substantial equity therein were formal judicial admissions made in open court in the course of the hearing conducted on September 12, 1980.

should be granted when the debtor has no equity interest in the property.[2]

It is the contention of the plaintiff, however, that the debtor can have no reasonable expectancy of consummating successfully the plan of reorganization which it has hitherto submitted for confirmation; and that it is therefore unjust to delay the granting of leave to plaintiff to take its interest in the property.[3]

To support this contention, the plaintiff has presented the testimony of the principal of the debtor organizations, Arch P. Pettit, which is unswervingly to the effect that his personal income (salary) is continuing at a level, and promises to continue at such a level,[4] so that he can pay some $1500 of it per month into the plan of reorganization. Otherwise, his testimony points to the existence of such assets as would, at this juncture, appear to present a reasonable prospect for the eventual successful implementation of the plan of reorganization. In this regard, the testimony of Mr. Pettit has been somewhat conclusionary, but it is uncontra-

dicted, and suggests that there is sufficient value in liquidatable assets which could conceivably defray the plan of reorganization.[5]

■ This crucial and material evidentiary fact is apparently not denied by the plaintiff, but rather it is suggested to the court that a trend toward higher interest rates on real estate loans which the economy has exhibited over the past twelve months will prevent the liquidation of the estate's assets in a reasonably timely or profitable manner. But the evidence presented on this point as well as the nature of its subject matter, which almost defies any reasonable predictability at this point, does not permit the court to speculate on this issue. For no witness was presented in respect of whom the qualifications necessary to predict the future of interest rates was demonstrated.

■ And further in this regard, it must be noted that the plaintiff's express and formal judicial admission to the effect that a substantial equity exists in the property in which it claims a security interest war-

---

2. This axiom, which was observed almost universally under the old Bankruptcy Act, appears to continue in effect under the new Bankruptcy Code, in the explicit requirement of § 362(d)(2) that relief from the stay be granted as to acts against property "if . . . the debtor does not have an equity in such property."

3. The facts further show that the defendants are in default in payments on their notes. But, through the plan of reorganization herein, they would undertake to pay 100% of their indebtedness to the plaintiff. The crucial problem in this, however, is that the property here involved would, under the plan be liquidated (and defendants reported in the course of the hearing of September 12, 1980, that a contract exists, subject to judicial approval, for its sale) and the funds would first go to pay a favored secured creditor and any excess would go into a general fund for the payment of other creditors. Thus, the indebtedness on the "Durwood" property (see note a1, *supra*) is pursuant to paragraph IV(5) of the proposed plan of reorganization, to be sold and:

"From the proceeds of such sale, a payment of $44,000 will be made to the Union National Bank of Little Rock . . . which is the holder of a valid second mortgage . . . The remainder of the proceeds derived from these sales shall be paid to the Creditor Payment Fund."

These provisions may conceivably create a question of "unfair discrimination" within the

meaning of § 1129(b)(1), of that issue should ultimately come into focus. But that question may be, under circumstances in which there is an equity cushion and some promise of a successful reorganization, reserved to the confirmation hearing.

4. Under questioning by plaintiff's counsel in the hearing of September 12, 1980, Mr. Pettit continually denied that there was any prospect of the termination of his current employment. Further, he insisted that, even if it were terminated, his expertise in waste technology was in great demand and that he frequently received offers of other desirable employment.

5. In this regard, the testimony of Mr. Pettit was uncontradicted and unwaveringly to the effect that value and income exists to defray the plan; that his rental properties have increased in value with low upkeep expense because of his ability to perform the repairs and upkeep personally; that two profitable businesses, a "stripping workshop" and Ener-Kleen (which would recycle oil for hydraulic equipment for a cost of $2.50 per gallon) are in operation and promise greater future profits; and that an offer exists to sell the Durwood property (see note a1, *supra*) for $55,000, a sum greater than the approximately $30,000 due on it. cf. note 3, *supra*.

rants a finding that it is adequately protected against the contingency of a failure to complete the plan of reorganization.[6]

■ In the alternative, the plaintiff requests relief from the automatic stay to seek payment from co-debtors on the obligations for which one of the tracts of realty serves as security. It is suggested in this regard that the automatic stay does not apply to acts or actions against co-debtors. From the precise letter of § 362 of the Bankruptcy Code, which seems to limit its proscription to acts or actions against the debtor or the debtors' estate. Under the provisions of § 105 of the new Bankruptcy Code, however, the courts of bankruptcy are granted the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." It is clearly the intention of Congress in enacting the provisions of chapter 11 of the Bankruptcy Code that the indebtedness be paid through the plan of reorganization than by the co-debtor in a case such as this in which the debtor clearly so proposes.[7] The court will therefore enjoin any act or action by the plaintiff to seek relief against the co-debtors.

It is therefore, for the foregoing reasons,

ADJUDGED that plaintiff's complaint for relief from the automatic stay be, and it is hereby, denied in all respects, including leave to proceed against co-debtors.

---

**6.** See note 1, *supra.*

**7.** It was the sense of the testimony of Mr. Pettit in the hearing of September 12, 1980, that part of the *raison d'être* of the proposed plan of reorganization was to hold the co-debtors harmless, who, be contended, were co-debtors only by mistake. It appears that the power granted by § 105 is available to grant the debtors a reasonable opportunity to carry out their intention through a chapter 11 reorganization.